## A92A0817. PRUETT et al. v. COMMERCIAL BANK OF GEORGIA et al.
### (424 SE2d 284)

ANDREWS, Judge.

Pruett and Groover appeal from an order granting summary judgment: (1) in favor of Commercial Bank of Georgia (Commercial Bank) on a $7,000 promissory note executed by the appellants, and (2) in favor of Commercial Bancorp of Georgia, Inc. (Commercial Bancorp) on a personal guarantee executed by appellants on a real estate note in the principal amount of $2,100,000.

Commercial Bank made a $2,100,000 real estate development loan to Millennium Development II Corp. (Millennium).[1] Millennium gave a note to Commercial Bank dated October 20, 1988, in the amount of $2,100,000 (the real estate note) which called for interest payments only and matured in one year. The real estate note was personally guaranteed by Pruett and Groover. Commercial Bank sold a portion of the loan to two other banks under agreements which provided that Commercial Bank continued to hold legal title to the loan and authority to collect on the note.[2] The 1988 real estate note matured in one year, and was renewed on October 20, 1989, for another year along with the personal guarantee of Pruett and Groover. After Millennium defaulted on the renewal note, Commercial Bank assigned all of its rights in the loan to Commercial Bancorp which demanded payment and sued Pruett and Groover on their personal guarantees.

On February 6, 1990, Pruett and Groover, who are both major shareholders in Millennium, also personally executed a promissory note in favor of Commercial Bank in the amount of $7,000 which was used to make certain improvements to the real estate development. The promissory note became in default by its terms when Pruett and Groover failed to pay the defaulted real estate note under their personal guarantees.

---

[1] The loan was secured by developed and undeveloped real property which according to an appraisal done for Commercial Bank in January 1990, had a current market value in excess of 2.5 million dollars. An affidavit from the same appraiser submitted by appellees in this action opines that the same property had a market value of approximately 1.6 million dollars as of January 1992.

[2] Although Commercial Bank's affidavit establishing these facts, and relied upon by the trial court in support of its summary judgment order, was not timely filed, the trial court was authorized to consider it in determining that the other banks participating in the loan were not necessary parties to the action to collect on the note. Contrary to claims that an objection was entered, the record contains no evidence that any objection was made to the late-filed affidavit. The timeliness of the affidavit was waived. *Suttle v. Northside Realty Assoc.*, 171 Ga. App. 928, 932 (321 SE2d 424) (1984). There was no error in the trial court's failure to grant appellants' motion to dismiss on the basis that the other participating banks were necessary parties.

Appellants claim that two affidavits supporting summary judgment which were relied upon to establish the amounts due on the notes were insufficient because no bank records were attached. See *Taquechel v. Chattahoochee Bank*, 260 Ga. 755 (400 SE2d 8) (1991) (affidavit which relied upon and referred to bank records was insufficient to support summary judgment where the records were not attached to the affidavit). The affidavits here do not refer to or rely upon bank or other records. Rather, they show that the affiant is personally familiar with both notes, the repayment history, default, and amounts due. Since this testimony was based on personal knowledge of the facts, it was sufficient, without attachment of records from which the facts may have been generated, to establish a prima facie case in support of summary judgment. See *WGNX, Inc. v. Gorham*, 185 Ga. App. 489 (364 SE2d 621) (1988). There was no error in the trial court's refusal to strike portions of these affidavits.

We find no merit in appellants' claims of fraud. The terms of the personal guarantees and other loan documents were clear, and although appellants claim the terms were not explained to them, they were not prevented from reading them. The record reveals no confidential relationship between appellants and Commercial Bank or Commercial Bancorp which would excuse the requirement that appellants exercise ordinary diligence to protect their own interests. *United Fed. Savings &c. Assn. v. Eubank*, 180 Ga. App. 402, 403 (349 SE2d 268) (1986). "One not prevented from reading the contract, and having the capacity and opportunity to do so, cannot after signing it claim he was fraudulently induced to sign by promises which contradict the express terms of the contract. . . . Moreover . . . the oral representations of a bank officer purporting to limit the bank's right of recourse in the event of a default in the payment of a promissory note will not support a defense of fraud in the procurement of the note." (Citations and punctuation omitted.) *Campbell v. C & S Nat. Bank*, 202 Ga. App. 639, 640 (415 SE2d 193) (1992). In refusing to renew the real estate note for a second time, and declaring the note due and payable, appellees were acting within their rights under the terms of the loans. Accordingly, claims that a bank officer assured appellants that in the event of default, the real estate would be taken as collateral before any suit on the guarantees, or that the note would be renewed again provides no defense. See *Casgar v. C & S Nat. Bank*, 188 Ga. App. 234, 235-236 (372 SE2d 815) (1988).

We find no factual issues with regard to appellants' execution of the notes, default thereon, and interest due thereon as of May 31, 1991, as established by the affidavits filed in support of these facts. The trial court properly granted summary judgment as to these issues. However, in attempting to establish the amount of interest accruing on each note after May 31, 1991, to the date of judgment, the

affidavits at issue recite a fixed daily rate of accrual. Post maturity interest on both notes accrues at a rate tied to the fluctuating prime rate, and cannot be stated in fixed terms. See *Read v. Benedict*, 200 Ga. App. 4, 8 (406 SE2d 488) (1991). Moreover, the only evidence of record showing that Pruett and Groover were given the statutory notice required by OCGA § 13-1-11 as to collection of attorney fees is in unsworn exhibits attached to trial briefs in support of the motions for summary judgment, or set forth in allegations of unverified complaints which were denied by appellants. This is insufficient to establish summary judgment on these issues. Accordingly, factual questions exist precluding summary judgment as to interest accruing after May 31, 1991, and the award of attorney fees on both notes.

Appellants correctly assert that the trial court was without authority to enter an order on January 27, 1992 requiring that appellants post supersedeas bond. The docketing of the appeal in this court on January 24, 1992 "terminated the authority of the judge of the lower court to act on the motion to require supersedeas bond then pending in that court." *Jones v. Sheffield*, 122 Ga. App. 574, 575 (178 SE2d 299) (1970). Accordingly, the trial court's order requiring supersedeas bond is invalid. Id. Appellees' motion for this court to order a supersedeas bond is denied.

*Judgment affirmed in part, reversed in part. Birdsong, P. J., and Beasley, J., concur.*

DECIDED OCTOBER 7, 1992 —
RECONSIDERATION DENIED NOVEMBER 2, 1992

*The Nodvin Firm, Marvin P. Nodvin, Micheline A. Besse,* for appellants.

*Frankel, Hardwick, Tanenbaum & Fink, Samuel N. Frankel, John D. Steel,* for appellees.

